IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | | |
|---|---|---|---|
| **FRANK LEE McGOWAN**, *pro se*, | * | | |
| | * | | |
| Plaintiff | * | | |
| v. | * | Civil No. | **PJM 17-1886** |
| | * | | |
| **PRINCE GEORGE'S COUNTY,** | * | | |
| **MARYLAND**, *et al.*, | * | | |
| | * | | |
| Defendants. | * | | |

## MEMORANDUM OPINION

Frank Lee McGowan, *pro se*, brings this suit against Prince George's County, Maryland Police Officers Michael Marriott, Jose Pina, Antonio Debarros, and Chad Schmick, and, ostensibly, against the County itself,[1] alleging several constitutional violations and tortious actions stemming from his arrest on January 16, 2015. The Police Officers and Prince George's County have filed a Motion for Summary Judgment, which has been fully briefed. For the following reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the Motion (ECF No. 65).

---

[1] McGowan, in his Amended Complaint, named Police District I as a Defendant. ECF No. 21 ¶ 2. The County Police Department filed a Motion to Dismiss pointing out that as a police department, it is an individual department of Prince George's County Government and therefore "lack[s] the capacity to be sued." ECF No. 41-1 at 2.

On January 26, 2018, the Court issued a Memorandum Order Granting the Motion to Dismiss without prejudice as to the Prince George's County Police Department, and giving McGowan leave to amend his complaint to add Prince George's County as a Defendant. ECF No. 55 at 2. After the Police Department was dismissed from the case, McGowan never filed a Second Amended Complaint.

There is a question, therefore, of whether the County is properly in the case. However, the County has been participating in the case since at least October 15, 2018, after the Court dismissed the Police Department, including filing the instant Motion for Summary Judgment. *See* ECF No. 65. Since the County has filed the instant Motion, and continues to seek to actively participate in the case, the Court will deem the County to be a Defendant in the case.

1

I. **Factual and Procedural Background**

The facts, drawn from McGowan's Amended Complaint (ECF No. 21), his deposition as cited in Defendants' Motion for Summary Judgment (ECF No. 65), and McGowan's response to the request for admissions (ECF No. 67), appear to be as follows:

On January 16, 2015, McGowan was employed as a Courier. ECF No. 65-3 (Ex. B (McGowan Deposition)) at 30. After a long day of work, he and his friend Kakai Namasaka decided to visit a bar in Hyattsville, Prince George's County, Maryland. ECF No. 21 ¶ 2; ECF No. 65-3 (Ex. C (Namasaka Deposition)) at 36.[2] First, they drove together to a store, where Mr. Namasaka bought a beer. *Id*.; ECF No. 67 at 3; ECF No. 65-3 at 47 (Ex. D (photograph of a single Bud Ice beer can found in McGowan's car)[3]). Upon re-entering McGowan's vehicle, they drove to the bar. ECF No. 65-3 at 38, ECF No. 67 at 3. Once they parked in the parking lot, they sat peacefully in McGowan's car. ECF No. 21 ¶ 3.

While they were sitting, parked, outside the bar, Namasaka was drinking his beer.[4] ECF No. 67 at 3. At that point two cars, one a marked police car with its lights on and the other presumably unmarked, approached McGowan's car from an adjacent parking lot and blocked his vehicle in, preventing its departure from the parking lot. ECF No. 21 at ¶ 4; ECF No. 65-3 at 12.

From both sides of the car, four plainclothes officers approached McGowan's vehicle and told him and Namasaka to get out of the car. ECF No. 21 at ¶¶ 4-6; *see* ECF No. 65-1 at 6; ECF

---

[2] McGowan refers to the venue as "Mustangs," whereas Defendants refer to it as "the Mustang Club." The Court will refer to it simply as the bar.
[3] The photo is not clear, but appears to depict a single can sitting in the dash of a car.
[4] Namasaka testified during his deposition that both he and McGowan were drinking from beer cans at this point. ECF No. 65-3 at 42. McGowan has testified that only Namasaka drank a beer while sitting in the car. *Id*. at 16. Defendants have offered no police reports, deposition testimony, or other evidence indicating whether it was either or both McGowan or Namasaka who they saw drinking.

No. 65-3 at 43.[5] The plainclothes officer who approached McGowan's side of the car and ordered him out of the car was wearing a fleece jacket. *Id.* at 14. As he was told to exit the vehicle, McGowan asked that plainclothes officer whether he was a police officer. *Id.* McGowan says the officer responded "yeah, yeah, yeah, get out of the car." ECF No. 65-3 at 14.

Then, as McGowan started to get out of the car, the officers grabbed his wrist and twisted it behind his back, telling him that he was being arrested for resisting arrest. ECF No. 21 ¶ 7; ECF No. 65-3 at 15. McGowan was pushed up against his car with his left arm twisted high along his back, such that his foot left the ground. He claims he was handcuffed and struck on the back of his legs so that he fell. *Id*. at 17-19; *see also* ECF No. 21 at ¶¶ 19-20. He says he remains injured to this day.

The officers then searched McGowan's car and his person, in the process seizing his driver's license. ECF No. 21 ¶ 7. When the officers searched McGowan's car, they supposedly found what they claimed appeared to be marijuana or marijuana residue in a clear, foldable sandwich bag. McGowan says there was no marijuana in the car.[6] ECF No 65-3 at 18.

McGowan was thereafter arrested and taken to the District I jail facility, where he was detained overnight. ECF No. 21 at ¶ 15. His car was not impounded; it remained in the parking lot of the bar, where McGowan retrieved it the next day, following his release. ECF No. 65-3 at 20,

---

[5] Defendants insist in their Motion for Summary Judgment that the officers verbally identified themselves as police as they ordered Namasaka and McGowan out of the car. *See, e.g.*, ECF No. 65-1 at 6. That may be true, but there are no affidavits or other evidence before the Court at this stage that supports that proposition. *See generally* ECF No. 65-3 at 14, 42-44.

[6] The Court notes, with some puzzlement, that Defendants have not submitted any evidence to support their version of the facts, such as police reports, deposition testimony from the officers, or any evidentiary record of the baggie that was seized. They attach only portions of the depositions of Namasaka and McGowan, a photo of one beer can supposedly found in McGowan's car, and McGowan's responses to interrogatories (which largely track his deposition testimony). That is the totality of the evidence before the Court. *See generally* ECF no. 65-3.

22. McGowan never received his driver's license back and was obliged to obtain a duplicate made the next week. *Id*. at 24. Since he was working as a courier, he was unable to work until such time as he obtained a new license. *Id*.

McGowan was later charged in the District Court for Prince George's County with disturbing the peace, resisting arrest, and second degree assault. *See* ECF No. 21 at ¶ 15. The charges were later dropped without explanation. *Id*.

On January 15, 2016, McGowan filed the present action in the Circuit Court for Prince George's County. On March 8, 2017, he filed a First Amended Complaint in that court alleging assault and battery, unlawful arrest, detention and confinement, negligence, intentional infliction of emotional distress, and conversion, against individual Prince George's County police officers and the Police Department. Defendants removed the case to this Court on July 6, 2017, asserting as the basis for removal federal question and supplemental jurisdiction.

McGowan's attorney in the state court action was not a member of the federal bar, and despite the Court's several attempts to reach her, she never responded and never entered an appearance in the case. Having been unable to arrange substitute counsel, McGowan is proceeding *pro se*.

On July 24, 2017, Officers Debarros, Marriott, Pina, and Schmick, filed an Answer to the First Amended Complaint. On August 3, 2017, Prince George's County Police Department filed a Motion to Dismiss, noting that it is well-settled Maryland law that county police departments are agencies of their respective counties and, as such, are not capable of suing or being sued. *See* ECF No. 55 (Order granting Motion to Dismiss without prejudice).

On September 5, 2017, the Court issued a Letter Order informing McGowan that he was now deemed to be proceeding *pro se*, requiring him to respond to the Police Department's Motion

to Dismiss. On September 20, 2017, McGowan filed a letter "respectfully requesting this case not be dismissed" and asking for the opportunity to proceed *pro se*. ECF No. 47.

On September 25, 2017, in response to McGowan's letter, the Court issued a second Letter Order advising him to obtain counsel or to let the Court know if he would like pro bono counsel appointed. He filed a Motion to Appoint Counsel on October 2, 2017. ECF No. 49. On November 20, 2017, John Everett, Esquire, of ChasenBoscolo Injury Lawyers was appointed to undertake a five-hour review of McGowan's claims. On January 26, 2018, after reviewing Attorney Everett's report, the Court sent McGowan a letter indicating that this might be a case that an attorney would be willing to take up on a contingency basis and gave him 60 days to try to obtain an attorney and directed that he inform the Court that he was willing to do so.

On the same day, the Court issued a Memorandum Order granting the Police Department's Motion to Dismiss without prejudice and granting McGowan leave to file an amended complaint. The Memorandum Order noted that he had 60 days to obtain an attorney, and that until then, the case would be stayed.

McGowan never filed an Amended Complaint adding Prince George's County as a Defendant[7] or notifying the Court that he would obtain an attorney. On April 11, 2018, the Court issued a *pro se* Scheduling Order.

On November 23, 2018, the County filed the present Motion for Summary Judgment. McGowan responded on December 14, 2018. The County filed no Reply.

---

[7] *But see* n. 1, *supra*.

## II. Analysis

### a. Summary Judgment Standard

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The alleged factual dispute must be genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In reviewing a motion for summary judgment, the Court views the facts, and all reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party, i.e., McGowan. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). The Court must also "refrain from 'weigh[ing] the evidence or mak[ing] credibility determinations'" at this stage. *Lee*, 863 F.3d at 327 (quoting *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015)). Accordingly, in reviewing a motion for summary judgment on the basis of qualified immunity, the Court generally adopts "the plaintiff's version of the facts." *Witt v. W. Va. State Police, Troop 2*, 633 F. 3d 272, 276 (4th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

### b. Admissions by Plaintiff

As an initial matter, Defendants argue that McGowan's admissions in the case establish their entitlement to summary judgment. Since McGowan did not respond to the request for admissions, they argue, the statements they submitted to him should be deemed admitted. In his Response opposing summary judgment, however, McGowan indicates that he called Defense Counsel upon receiving the request for admissions, and "then asked him what [McGowan] needed

to do with this, for lack of a better term, garbage. [Defense counsel] told [McGowan] that [he] had the option to not respond to the letter, and [McGowan] honestly felt that it would be wrong to dignify this nonsense with a written response." ECF No. 67 at 3. McGowan then proceeded to answer each request for admissions, admitting some and not admitting others.

Federal Rule of Civil Procedure 36(a) allows one party to submit to the other a request for admissions, directing that "each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney."

However, especially where the supposedly admitted facts are central to the case, and, the Court might add, the responding party is acting *pro se* and avers that he was possibly misled by opposing counsel about the need to respond to the request, "Rule 36 does not require the Court to treat all facts as admitted when a litigant fails to timely respond to Requests for Admissions…" *Letren v. Trans Union, LLC*, No. PX15-3361, 2017 WL 445237 (D. Md. Feb. 2, 2017) (Xinis, J.) (citing *United States v. Turk*, 139 F.R.D. 615, 617- 18 (D. Md. 1991). Sometimes, it does not "further the interests of justice to deem Plaintiff to have admitted [certain] central facts, given the Fourth Circuit's 'strong policy that cases be decided on their merits.'" *Id.* at *5 (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)).

Since McGowan did eventually respond to the request for admissions, *see* ECF No. 67, and since the admissions that Defendants sought concerned facts central to the case, the Court will accept McGowan's responses to the request for admissions even though made out of time.[8]

c. *Tort Claims*

McGowan asserts claims of assault and battery (Count I), negligence (Count IV) and intentional infliction of emotional distress (Count V) against Defendants. Defendants cite public official immunity as a defense to the former two counts. Their position is well-taken.

Public official immunity is a legal defense available to certain limited classes of local government employees. *Dipino v. Davis*, 354 Md. 18 (Md. Ct. App. 1999). In accordance with the doctrine of public official immunity, a governmental actor enjoys a certain public official immunity for his or her non-malicious acts if it is determined that: (1) he is a "public official," and (2) his tortious conduct occurred while he was performing discretionary acts in furtherance of his duties. *Ashburn v. Anne Arundel County*, 306 Md. 617, 622 (Md. Ct. App. 1986) (quoting *James v. Prince George's County*, 288 Md. 315 (Md. Ct. App. 1980)). Law enforcement officers are public officials for the purposes of public official immunity. *Cooper v. Rodriguez*, 334 Md. 680, 727 (Md. Ct. App. 2015). The public official immunity police officers enjoy in accordance with the doctrine frees them from suit for their alleged negligent acts. However, there is no immunity for any alleged intentional torts or any alleged acts committed with actual malice. *Ashton v. Brown*, 339 Md. 70, 118 (1995). Still, McGowan has not alleged that the officers acted with wrongful

---

[8]McGowan has submitted no other evidence in support of denying Defendants' Motion. In his Response in Opposition, ECF No. 67, he claims that he propounded several items on Defense Counsel during the discovery period, including what he seems to imply are the only copies of relevant medical records from the case and e-mails from employers who rejected his job applications because of his medical condition. Defendants have not responded to this contention.

intent or with malice as to either of these counts. Defendants are therefore entitled to public official immunity on McGowan's battery and negligence claims. Counts I and IV are **DISMISSED**.

As to the claim of intentional infliction of emotional distress, to sustain a cause of action for intentional infliction of emotional distress, a plaintiff must allege and prove that the Defendant committed: (1) an intentional act (2) that was extreme and outrageous in character (3) that actually resulted in severe emotional distress to the plaintiff. *Williams v. Prince George's County, Maryland et al.,* 112 Md. App. 526, 555 (1996) (*quoting Kentucky Fried Chicken Co. Nat'l Management v. Weathersby*, 326 Md. 663, 670-71 (1992). There is no legal liability simply for the intentional infliction of emotional distress; the conduct must have been extreme and outrageous. *Williams*, 112 Md. App. at 555.

Here, McGowan alleges no facts that rise to the level of intensity required by *Williams*, nor does he try to explain how the Officers' conduct fulfills that standard. McGowan's claims are more akin to a conventional tort of assault and battery, discussed above. Accordingly, his claim for intentional infliction of emotional distress (Count V) is also **DISMISSED**.

  *d. Conversion*

McGowan claims that the Officers seized and never returned his driver's license. They appear to concede that he never got it back. *See* ECF No. 65-1 at 29-30.

Conversion is the intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may be justifiably required to pay the other for the full value of the chattel. *U. S. v. Arora*, 860 F. Supp. 1091 (D. Md. 1994), *aff'd* 56 F. 3d 62 (4th Cir. 1995). In sum, it is the physical act of control or dominion, combined

9

with an intent to control to the exclusion of the owner. *Darcars Motors of Silver Spring, Inc., v. Borzym*, 379 Md. 249, 261 (MD. Ct. App. 2004).

Defendants argue that they are entitled to summary judgment on this count because McGowan has provided no evidence that they took his license with the specific intent to deprive him of it for a wrongful purpose. Because they asked for his license during the course of the arrest, they argue, it was a lawful possession of a state-owned document. But this would hardly justify retaining his license for an eternity.

Here, neither party provides evidence as to why the license was not returned. McGowan's access to his license was significantly impaired, requiring him to obtain a new one. He was unable to work for the intervening week without one. Therefore, the fact of whether the retention was intentional is a question of fact appropriate for trial, and Defendants' Motion for Summary Judgment is **DENIED** as to Count VI.

  e. *Constitutional Claims and Qualified Immunity*

McGowan also alleges that his detention and arrest violated his Fourth Amendment rights under the U.S. Constitution, and asserts a claim against Defendants pursuant to 18 U.S.C. § 1983. Defendants reply that the arrest was justified because they had probable cause, and that, regardless, they are entitled to qualified immunity.

Courts apply a two-step test in determining whether a police officer is entitled to qualified immunity, inquiring, first, "whether the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the officer's conduct violated the plaintiff's constitutional right," and, second, if the first prong is satisfied, "whether the right at issue was 'clearly established' at the time of the officer's conduct." *Wilson v. Prince George's Cty., Md.*, 893 F.3d 213, 219 (4th Cir.

2018) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). However, the Fourth Circuit analyzes claims of qualified immunity by first examining whether the plaintiff has alleged the deprivation of a constitutional right, which the Fourth Circuit recognizes as the more "beneficial" approach. *Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 898–99 (4th Cir. 2016) (citing *Pearson*, 555 U.S. at 232, 236) (internal quotation marks omitted).

McGowan complains of three possible constitutional violations, two pertaining to his allegedly unlawful arrest (Count II), and the other to his allegedly unlawful detention (Count III). As to his unlawful arrest, he argues that the officers were not justified in arresting him, and further that they exercised excessive force in effectuating the arrest. The Court finds there is a genuine dispute as to what actually took place during McGowan's encounter with the police. Viewing the evidence in the light most favorable to him, as the Court must at this stage, his constitutional rights may well have been violated. If McGowan's version of what happened is accepted, there can be little doubt that his rights were well-established.

Taking the encounter from the beginning, it is by no means clear that Defendants had probable cause <u>to arrest</u> McGowan, immediately upon approaching him. Defendants argue that they saw McGowan and Namasaka drinking in the car, which would be an obvious violation of

the law that provided the requisite probable cause to charge him with an offense.[9] But the only evidence they point to are the admissions they argue McGowan made when he failed to timely respond to their request for admissions. *See* ECF No. 65-1 at 10. Presumably, Defendants are referring to Requests for Admissions #11 and #13, which asked McGowan to admit that he was drinking while parked in the car and that the Defendant Officers observed him doing so. ECF No. 65-1 at 4. Defendants provide no other evidence about why they had any cause to approach the car.

As indicated, however, the Court does not accept McGowan's supposed "admissions" as undisputed facts, given the responses he gave in his Opposition to the Motion for Summary Judgment, ECF No. 67, which the Court has accepted. Not only is there no evidence before the Court as to what the officers themselves "saw," (How would McGowan know what they "observed,"? *see* ECF No. 65-1 at 4 (statement #13)); Even if they saw Namasaka drinking and justifiably approached him, for his part, McGowan maintains that he himself was not drinking. What the officers saw before they approached the car, therefore, is in dispute, and since the legality of the stop and subsequent arrest flow from those facts, it will be up to the trier of fact to decide what actually took place.[10] If the arrest was not justified, McGowan's subsequent overnight detention would also have been unlawful. The Court finds that the Defendants are not entitled to

---

[9] But this would only give the officers probable cause to issue a citation to McGowan, not to arrest him. Under §§ 19-204 and 19-301 of Md. Code, Art. 2B, it is a misdemeanor, punishable only by a fine of up to $100, to possess an alcoholic beverage in an open container in a parking area outside a retail establishment. Those sections were repealed (effective July 1, 2016) and re-codified, without substantive change, in § 6-322 of the Alcoholic Beverages Article of the Code.

[10] McGowan was not arrested for having an open container in a parked car, *see* n. 9, *supra*. He was charged with disturbing the peace, second-degree assault, and resisting arrest when he exited his vehicle.

qualified immunity as to Counts II and III and **DENIES** Defendants' Motion for Summary Judgment as to Count II as to the arrest of McGowan and Count III.

Insofar as McGowan alleges the use of excessive force in effecting the arrest in Count II, *see* ECF No. 21 ¶¶ 19-21, incorporated by reference in ¶ 22, Defendants argue the force they used was justified, given (1) the threat they believe McGowan posed, (2) his "active resistance," and (3) the severity of the crime at issue. ECF No. 65-1 at 12.

A claim that a police officer used excessive force in making an arrest, investigatory stop, or seizure of a person is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Armstrong*, 810 F.3d at 899 (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). Courts examine three factors to determine if an officer's use of force was objectively reasonable: (1) the severity of the crime at issue, (2) the extent to which a suspect "poses an immediate threat to the safety of the officers or others," and (3) the extent to which a suspect "is actively resisting arrest or attempting to evade arrest by flight." *See Wilson*, 893 F.3d at 219–20 (quoting *Graham*, 490 U.S. at 396) (internal quotation marks omitted).

As to the first factor, it is not entirely clear from the record what crime, if any, Defendants had observed before, during, and after their approach to McGowan's car. Based on the Amended Complaint and McGowan and Namasaka's depositions, however, it seems that they were sitting peacefully in the parked car, even if the officers did see them drinking some beverage before they approached. *See* n. 9, *infra*. In any event, this was not a severe crime.

As to the second factor, Defendants seem to argue that McGowan posed a threat because of the circumstances of the situation. They say that because "the officers approached Plaintiff's vehicle at night in the parking lot" of the bar, they "would not have known whether either man had weapons inside the vehicle." ECF No. 65-1 at 12. In the sense that officers may never know if

there are weapons inside any vehicle until they approach, that may be a correct statement. However, the fact that it was nighttime and in a parking lot, without more, does not equate with it being "likely" that weapons were involved.[11]

As to the third factor, Defendants argue that McGowan "did not immediately obey the lawful order given him," which "only increased the threat level occurring during his apprehension and arrest," thus justifying the use of force against him. *Id*. at 13. But it is undisputed that, before exiting his vehicle, McGowan simply asked the plainclothes officer who approached his side of the car whether he was indeed a police officer. Defendants summarily portray this inquiry as tantamount to resisting arrest. But the evidence before the Court at this juncture shows that at best the officer responded "yeah, yeah, yeah," then immediately twisted McGowan's arm behind his back as he got out of the car (in compliance with the officers' instructions). Moreover, the Officer's arrest involved striking the backs of McGowan's legs causing him to crumple to the ground. *See* ECF No. 65-3 at 13; *id*. at 44 (testifying that the officers dragged McGowan out of the car and then assaulted him).

Defendants point to *Souder v. Toncession*, No. AW-07-1996, 2009 WL 4348831 (D. Md. Nov. 30, 2009), and *Moore v. Winer*, 190 F. Supp. 2d 804, 807 (D. Md. 2002) to support their contention that the use of force is appropriate to counter a suspect's resistance to arrest. While that proposition may be true as a general matter, neither case is particularly helpful to Defendants' cause. In *Souder*, officers had pulled the plaintiff out of his apartment after he refused to step outside. 2009 WL 4348831 at *1. They had approached his home with a warrant for his arrest.[12]

---

[11] There is no indication that Defendants found any weapons on either man or in the car.
[12] Officer Souder was on patrol duty at the time, and was presumably also in his police uniform, unlike Defendants. 2009 WL 4348831 at *1.

Souder asked to see the warrant but the officers could not produce it because they did not have it. They then spent "a couple of minutes… trying to convince Souder to step outside. Souder had his right hand on the door and tried to close it." *Id.* In *Moore*, officers were justified in using force where they reasonably drew "conclusions from plaintiff's erratic behavior that he needed to be subdued to prevent harm to himself, other[s]… and the officers." 190 F. Supp. at 806.

Here, McGowan merely asked the plainclothes officer to confirm his identity as a police officer before getting out of the car. That was a reasonable inquiry, given that a man in street clothes was knocking on his car window (*at night*! *in a parking lot*!) telling him to get out. The question was reasonable even if the plainclothes officer identified himself as a police officer while commanding McGowan to get out of the car, and it is not undisputed that he did identify himself as such, *see infra* n. 5. There is no evidence before the Court that this interaction lasted more than a few seconds at most, and in no way did McGowan try to retreat, as in the *Souder* case. There is no indication that McGowan was acting erratically, as was the suspect in *Moore*. Defendants insist that McGowan "always had the option to cooperate with the officers and avoid even the potential for injury," but instead "his own disobedience of the lawful order given him" led to his purported injury. ECF No. 65-1 at 14. Under the circumstances of this case, the argument fails to persuade. If the standard is that officers are automatically justified in using force when a reasonable request is made to see a plainclothes officer's identification after the officer asks the person for his or her own ID or to exit a car, there would seem to be no limit to the application of physical force in almost any routine investigatory or traffic stop.

There is, then, no qualified immunity with respect to McGowan's excessive force claim as pled in Count II, and Defendants' Motion for Summary Judgment as to that aspect of Count II is also **DENIED**.

*f. Vicarious Liability*

In *Monell v. Department of Social Services of City of New York*, the Supreme Court established that municipalities cannot be held liable on a *respondeat superior* theory unless they perpetuate a policy or custom that led to the plaintiff's injury. 436 U.S. 658, 694 (1978). In the instant case, McGowan only alleges that "Prince George's County… failed to maintain… proper management of the Defendant officers to ensure that they would not engage in tortious conduct…". ECF No. 21 at 9 ¶ 11. He has not elaborated on that claim in subsequent filings, and no evidence before the Court supports an inference of a pattern or practice of police misconduct or failure to train in Prince George's County. The Court will therefore **GRANT** the Motion for Summary Judgment as to Count VII.[13]

### III. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 65, is **GRANTED-IN-PART** and **DENIED-IN-PART**.

A separate Order will **ISSUE**.

**August 9, 2019**

/s/

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

---

[13] The Court notes that Maryland has established that tort judgments against a county sheriff or a deputy sheriff may be payable by either the State or the relevant County, depending on whether the sheriff or deputy sheriff was acting as a state or county employee at the time of the allegedly tortious conduct. *See* Md. Code Ann., State Fin. & Proc. § 9-108; *see also Dotson v. Chester*, 937 F.3d 920, 928 (4th Cir. 1991). Since McGowan's Conversion claim has been allowed to go forward, the County will remain in the case.